IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAUL F. MITCHELL, :
    Plaintiff :
: No. 1:19-cv-358
    v. :
: (Judge Kane)
KEVIN KAUFFMAN, et al., :
    Defendants :

**MEMORANDUM**

Plaintiff Paul F. Mitchell ("Plaintiff"), an individual presently confined at the Curran-Fromhold Correctional Facility in Philadelphia, Pennsylvania ("CFCF"), filed the instant pro se complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Pennsylvania on December 31, 2018. (Doc. No. 2.) He also filed a memorandum of law in support of his complaint. (Doc. No. 8.) By Memorandum and Order entered on February 27, 2019, the Eastern District of Pennsylvania, inter alia, granted Plaintiff leave to proceed in forma pauperis and transferred Plaintiff's claims against Defendants Kauffman, Green, Goss, Butterbaugh, Fisher, Girard, and Keiser to this Court. Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[1] the Court will perform its mandatory screening of the complaint and, for the reasons set forth below, will dismiss the complaint without prejudice for Plaintiff's failure to state a claim upon which relief may be granted.

**I.    BACKGROUND**

As noted above, named as Defendants in this civil action are: Kevin Kauffman, Superintendent at the State Correctional Institution Huntingdon in Huntingdon, Pennsylvania ("SCI Huntingdon") ("Kauffman"); Connie Green, Assistant Superintendent and Grievance Coordinator at SCI Huntingdon ("Green"); R. Goss, the Manager of Psychology at SCI

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

1

Huntingdon ("Goss"); K. Butterbaugh and K. Fisher, psychologists at SCI Huntingdon ("Butterbaugh" and "Fisher"); Linda Girard, the Pennsylvania Board of Probation and Parole ("PBPP") Supervisor at SCI Huntingdon ("Girard"); and Suzan Keiser, the IPA at SCI Huntingdon ("Keiser"). It appears that while incarcerated at SCI Huntingdon, Plaintiff was required to participate in the sex offender program. (Doc. No. 2 at 5.) Plaintiff suggests that officials at SCI Huntingdon erroneously classified him as a sex offender, and claims that he experienced discrimination and retaliation while incarcerated at SCI Huntingdon. (Id. at 6-7.)

In his memorandum of law, Plaintiff notes that after arriving at SCI Huntingdon, he had a meeting with Butterbaugh, where he was informed that she had to do an evaluation for Plaintiff's placement in treatment. (Doc. No. 8 at 5.) Plaintiff informed her that his case "had nothing to do with lewdness or sexual gratification." (Id.) He showed her the notes of testimony from his criminal proceedings, and Butterbaugh told him "to contact [his] attorney because these facts were extremely important." (Id. at 5-6.) She told Plaintiff that "she would call [him] back up in a week or so because she was required by policy to do an evaluation/assessment." (Id. at 6.) Butterbaugh also gave Plaintiff "Psychology Manager Richard Goss['s] and Deputy Thomas['s] names to write who never responded back to [him] at all through request slips." (Id.) Ultimately, Plaintiff received notice from Fisher that he had been enrolled in the sex offender program ("SOP"). (Id. at 7.)

Plaintiff sent a request slip to Green, informing her that his civil rights were being violated because officials were discriminating against him based on his "age, religion (Christian), race, and gender." (Doc. No. 8-1 at 3.) Plaintiff alleges that Green "completely ignored [his] complaint and brushed [him] off by stating if [he] wanted to successfully complete the SOP then take it." (Id.) Plaintiff suggests that the Defendants' actions violated his rights under the First,

Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. As relief, Plaintiff seeks $300,000.00 "or anything the Court recommend[s]." (Doc. No. 1 at 9.)

## II. LEGAL STANDARD

### A. Screening and Dismissal of Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. 28 U.S.C. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions. See 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted."); 42 U.S.C. § 1997e(c)(1) ("The Court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the Court is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Smithson v. Koons, Civ. No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth

3

under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See Iqbal, 556 U.S. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429 U.S. at 106) (internal quotation marks omitted)).

4

## B. Section 1983 Standard

To state a viable § 1983 claim, a plaintiff must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 580-81 (3d Cir. 2003).

Moreover, in addressing whether a viable claim has been stated against a defendant, the court must assess whether the plaintiff has sufficiently alleged that the defendant was personally involved in the act that the plaintiff claims violated his rights. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Liability may not be imposed under § 1983 on the traditional standards of respondeat superior. Capone v. Marinelli, 868 F.2d 102, 106 (3d Cir. 1989) (citing Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976)). Instead, "supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct." Capone, 868 F.2d at 106 n.7. There are only two avenues for supervisory liability: (1) if the supervisor "knew of, participated in or acquiesced in" the harmful conduct; and (2) if a supervisor established and maintained a policy, custom, or practice which directly caused the constitutional harm. Id.; Santiago, 629 F.3d at 129; A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Ctr., 372 F.3d 572, 586 (3d Cir. 2004). As it concerns the second avenue of liability, conclusory, vague, and speculative allegations of custom, policy, or practice are insufficient. Id.

## III. DISCUSSION

### A. Plaintiff's Complaint

Upon initial screening pursuant to the PLRA, the Court will dismiss Plaintiff's complaint.

First. to the extent Plaintiff seeks to hold the supervisory Defendants liable for the alleged constitutional violations, Plaintiff fails to provide any allegations of personal involvement in his complaint against the supervisory Defendants. Plaintiff has not alleged how Defendants Kauffman, Green, Goss, Girard, and Keiser were involved in the conduct giving rise to this action. Rather, Plaintiff seeks to hold them liable premised on a theory of respondeat superior. Supervisors, however, are not typically liable under § 1983 solely on this theory. See City of Okla. City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690-91 (1978). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (citing Rode).

Personal involvement may be established through allegations of personal direction or of actual knowledge and acquiescence. Rode, 845 F.2d at 1207. As set forth in Rode,

> A defendant in a civil rights action must have personal involvement in the alleged wrongs…. [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or knowledge and acquiescence, however, must be made with appropriate particularity.

Id. at 1207. Moreover, the filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation. See Pressley v. Beard, 266 F. App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to the inmate plaintiff's later-filed grievances do not establish the involvement of

6

those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of Corr., No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate plaintiff's grievance does not state a constitutional claim), aff'd, 142 F.3d 430 (3d Cir. 1998) (table).

As the Second Circuit stated in Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam) a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action. Permitting supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement. Rode, 845 F.2d at 1207; see also Greenwaldt v. Coughlin, 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); Rivera v. Goord, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (holding allegations that the inmate plaintiff wrote to prison officials and was ignored were insufficient to hold those officials liable under Section 1983).

Here, the Court finds that Plaintiff's complaint and memorandum of law fail to allege any personal involvement of Defendants Kauffman, Green, Goss, Girard, and Keiser. Rather, Plaintiff's claims against these individuals consist of little more than assertions of respondeat superior. As a matter of law, these assertions do not suffice to state a claim against these Defendants. Accordingly, Defendants Kauffman, Green, Goss, Girard, and Keiser will be

7

dismissed without prejudice. Plaintiff will be granted leave to amend his complaint to include specific allegations, if any, against each Defendant in order to cure the noted deficiencies.

Plaintiff's complaint also fails to set forth a constitutional deprivation against Defendants Butterbaugh and Fisher. As noted above, Plaintiff alleges that he met with Defendant Butterbaugh shortly after arriving at SCI Huntingdon (Doc. No. 8 at 5-6), and that he ultimately received a letter from Defendant Fisher indicating that he had been enrolled in the SOP (id. at 7). These assertions are simply insufficient to describe how Defendants Butterbaugh and Fisher were involved in the alleged violations of Plaintiff's constitutional rights. Accordingly, Defendants Butterbaugh and Fisher will also be dismissed without prejudice. Plaintiff will be granted leave to amend his complaint to include specific allegations, if any, against each defendant in order to cure the noted deficiencies.

### B. Leave to Amend

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). The court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Id. The court must also determine whether a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

8

Here, Plaintiff will be afforded an opportunity to file an amended complaint related to his claims against the Defendants. Plaintiff is advised that the amended complaint must be complete in all respects. It must be a new pleading which stands by itself without reference to the original complaint or any other documents already filed. The amended complaint should set forth his claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Each paragraph should be numbered. It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts which he claims violated his rights. Mere conclusory allegations will not set forth a cognizable claim. The Court will also direct the Clerk of Court to mail Plaintiff a civil rights complaint form to use for filing his second amended complaint, which the Court encourages Plaintiff to use.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's complaint (Doc. No. 2) will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for Plaintiff's failure to state a claim upon which relief may be granted. Plaintiff will be afforded thirty (30) days from the date of this Memorandum's corresponding Order in which to file an amended complaint in conformance with the above. An appropriate Order follows.